Terri–Ann GROSS, Plaintiff,

v.

Nadine P. WINTER, Defendant.

Civ. A. No. 88–779.

United States District Court,
District of Columbia.

Aug. 1, 1988.

Stephen L. Braga, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for plaintiff.

Gregory E. Mize, Gen. Counsel, Council of the District of Columbia, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This action is before me on defendant's Motion to Dismiss. Defendant Nadine Winter, D.C., Councilmember, hired plaintiff Terri-Ann Gross, an attorney, as a legislative researcher under the Excepted Service provisions of the D.C. Code. After six and one half months of work, defendant terminated plaintiff. Plaintiff brings two federal causes of action under 28 U.S.C. § 1343(a)(3): she alleges that she was dismissed in retaliation for the exercise of her First Amendment right to free speech; she also alleges that she was denied her First Amendment right to freely practice her religion. Plaintiff also brings three common law claims under the doctrine of pendent jurisdiction: wrongful discharge in violation of public policy, slander and intentional infliction of emotional distress.

Defendant raises two threshold defenses which, if meritorious, would preclude a lawsuit against her. First, she alleges that plaintiff's federal claims should be dismissed because she has absolute legislative immunity, a doctrine whose reach, she contends, is prescribed by the Speech and Debate Clause of the Constitution. Secondly, defendant alleges that the District of Columbia's employment interest in an employee hired under the "Excepted-Service" outweighs, as a matter of law, that employee's First Amendment rights. Defendant also claims that she is absolutely immune from the common law claims under the local speech and debate clause, D.C.Code § 1-223, that wrongful discharge of an at-will employee is not a recognized tort in the District of Columbia and that plaintiff's claims fail to constitute a cause of action amounting to either defamation or intentional infliction of emotional distress. Because none of these threshold defenses has merit, I deny defendant's Motion to Dismiss.

## THE FACTS

On a motion to dismiss, the well-pled allegations in the complaint must be accepted as true, and any ambiguities or uncertainties concerning the sufficiency of the claim must be resolved in favor of the plaintiff. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1979); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). As defendants concede, plaintiff's statement of the facts must be accepted as true in resolving this pre-discovery motion to dismiss.[1]

Defendant hired plaintiff as a legislative researcher under the "excepted-service" provisions of the D.C. Code; plaintiff began work on March 17, 1987. In April, 1987, plaintiff received defendant's permission to take a day of leave to observe Passover although defendant indicated in the office that she was pleased that another Jewish employee had not requested the same holiday. This day of absence was credited as administrative leave and not deducted from her annual leave. On August 17, 1987, plaintiff requested a day and a half of leave to attend the Rhode Island funeral of a close childhood friend who had died unexpectedly in her sleep. Defendant refused to rule on plaintiff's request before she left although she knew that plaintiff was in a highly emotional state. As a result, plaintiff suffered emotional distress on her trip. Upon her return to the office, plaintiff found a memo from defendant on her desk accusing her of taking leave which had been denied and placing plaintiff on "leave without pay" status for one month. When plaintiff went to protest this action, she was informed that defendant would not be in that day because she intended to attend the funeral of a friend who had just died in New York. Plaintiff and a representative from the Secretary of the Council's office subsequently convinced defendant to rescind this memo but defend-

ant stated that any future unexplained absence would result in termination. Defendant also announced to her staff that no one had the right to complain outside the office concerning matters within the office.

On September 8, 1987, defendant denied by memorandum plaintiff's request for a two day leave to observe the Jewish holiday of Rosh Hashanah. The next day, defendant stated in her office that religious holidays were not part of her agenda. Plaintiff contacted the Anti–Defamation League of B'nai B'rith (ADL) concerning this denial of leave to observe a religious holiday. The ADL arranged for a third party to meet with defendant to try to convince her to grant plaintiff the requested leave. In mid-September, this third party met with defendant and informed her that plaintiff had spoken to the ADL about the denial of leave. Defendant told the third party that she would take the matter under advisement. On September 21, 1987, plaintiff learned, by way of memorandum, that her position was terminated due to "staff reassignments" effective October 5th.

On September 22, 1987, plaintiff held a news conference with the ADL to inform the public of the circumstances surrounding plaintiff's termination. Upon her return from the press conference to the office, plaintiff was informed by defendant that she had been placed on administrative leave status effective that day through October 5, 1987, her termination date.

On a television news interview on the evening of September 22, 1987, defendant stated that she fired plaintiff because she was incompetent and not because she had gone to the ADL.

Since plaintiff's termination, defendant has made two comments in her office concerning plaintiff and the fact that she is Jewish.

Plaintiff seeks damages in the amount of $20,250,000.

---

1. *See* Defendant's Reply to Opposition to Dismissal Motion at 5 ("Of course, for purposes of a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim, the allegations of the complaint should be construed favorably to the pleader.") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

## I  ABSOLUTE IMMUNITY

### 1.  Constitutional Provision

■ The Speech and Debate Clause of the Constitution provides absolute immunity to members of Congress "for any Speech or Debate in either House." U.S. Constitution, Article 1, sec. 6, cl. 2.[2] The Clause immunizes members of Congress for many acts beyond simple speeches and debates on the floors and in the committees of Congress. *Browning v. Clerk, U.S. House of Representatives*, 789 F.2d 923, 925 (D.C.Cir.), *rehearing en banc denied*, 793 F.2d 380 (D.C.Cir.), *cert. denied*, 479 U.S. 996, 107 S.Ct. 601, 93 L.Ed.2d 601 (1986). It protects "purely legislative activities," *United States v. Brewster*, 408 U.S. 501, 512, 92 S.Ct. 2531, 2537, 33 L.Ed. 2d 507 (1972), i.e., acts which are an:

> integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation

*Gravel v. United States*, 408 U.S. 606, 625, 92 S.Ct. 2614, 2627, 33 L.Ed.2d 583 (1972). For example, the Clause protects members of Congress from judicial inquiry into their votes, *Kilbourn v. Thompson*, 103 U.S. 168, 26 L.Ed. 377 (1881); *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), and their participation in committee investigations and proceedings. *Doe, supra; Gravel, supra; cf Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

[2] At the same time, the Clause provides no "constitutional immunity beyond its carefully defined scope". *Chastain v. Sundquist*, 833 F.2d 311, 314 (D.C.Cir.

1987). It does not protect official acts which are not "legislative in nature" *Chastain, supra* (Speech and Debate Clause does not protect Congressman's allegedly libelous statements to the executive branch urging the Attorney General to conduct an investigation of an individual because the purpose of the statements was to attempt to influence the conduct of the executive branch); *Hutchinson v. Proxmire*, 443 U.S. 111, 133, 99 S.Ct. 2675, 2687, 61 L.Ed. 2d 411 (1979) (Senator's allegedly defamatory statements to public in making Golden Fleece awards are not protected by Speech and Debate Clause because press releases are "primarily means of informing those outside the legislative forum").

[3] Congressional personnel decisions are protected by the Speech and Debate Clause to the same extent that the affected employee's duties are an integral part of the legislative process. *Browning, supra*, 789 F.2d 928–929 (citations omitted). *Browning*, made clear that Speech and Debate Clause immunity for members of Congress extends beyond "personnel actions where the employee has discretionary input into the legislative process." *Id.*, 789 F.2d at 929. In *Browning*, congressional defendants, including the Speaker of the House, were held to be immune from suit by a black former Official Reporter for the House of Representatives who alleged that she was discharged for racially discriminatory reasons. In reaching this conclusion, the Circuit Court reasoned that an Official Reporter's duties are "directly related to the proper execution of ... legislative investigation," *id.* at 929, which is "part of the due functioning of the House of Representatives," *id.* at 930, and thus "clearly within the legislative sphere." *Id.*[3]

**2.** United States Constitution, Article 1, sec. 6, cl. 2 provides:
> for any Speech or Debate in either House [Senators and Representatives] shall not be questioned in any other Place.

**3.** In contrast, in *Davis v. Passman*, 544 F.2d 865 (5th Cir.1977), *rev'd on other grounds*, 571 F.2d 793 (5th Cir.1978) (en banc), *rev'd*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), a Congressman was not immune from suit where he acknowledged that he terminated his competent Deputy Administrative Assistant for sexually dis-

criminatory reasons because "when members of Congress dismiss employees, they are neither legislating nor formulating legislation." *Id.* at 880. The Court also noted that members of Congress were "free to dismiss staff members for any reason or for no reason, *so long as broad limits established by the Constitution are not exceeded*". *Id.* at 880 n. 25 (emphasis added).

The Supreme Court declined to reach the issue of whether Congressman Passman had absolute immunity under the Speech and Debate

Our circuit defined the outer limits of the protection afforded members of Congress under the Speech and Debate Clause for personnel decisions in *Walker v. Jones*, 733 F.2d 923 (D.C.Cir.1984). In that case, congressional defendants were denied absolute immunity where the former manager of the restaurant for the House of Representatives alleged that she was terminated because she was a woman. The court held that "food services ... are neither intimately cognate to the legislative process nor work that significantly informs the shaping of our Nation's laws." *Browning*, 789 F.2d at 928 (referring to *Walker, supra*, p. 1424).

▇ Defendant contends that the broad absolute immunity afforded congressional defendants under the Speech and Debate Clause in *Browning* extends to a D.C. Councilmember. While she implicitly acknowledges that the Speech and Debate Clause protects only members of Congress, she apparently contends that federal common law immunity protects her personnel decisions to the same extent that the Speech and Debate Clause protects members of Congress. Thus she asserts that even if she dismissed plaintiff in retaliation for the exercise of her right to free speech and denied her the right to freely exercise her religion, she cannot be sued. Defendant asserts that she has absolute legislative immunity because her "personnel decision to terminate Ms. Gross was ... within the sphere of legitimate legislative activity." *See* Defendant's Motion to Dismiss at 6.

2. *Legislative immunity for local legislators is not as broad as that afforded members of Congress under the Speech and Debate Clause*

Defendant errs, however, in assuming that the standard for "legitimate legislative activity" is that prescribed by *Browning*, a decision which applied only to protection afforded members of Congress under the Speech and Debate Clause. Defendant incorrectly assumes that the scope of the Speech and Debate Clause is the scope of

immunity afforded any rulemaker. *See United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980) (state legislator cannot claim absolute legislative immunity in federal criminal prosecution).

Defendant neglects to mention that the court in *Browning* interpreted Speech and Debate Clause immunity and no other kind. As Judge Posner stated in *Forrester v. White*, 792 F.2d 647 (7th Cir.1986) (Posner, J., dissenting), *rev'd*, —— U.S. ——, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988): if the *Browning* holding is correct, "it is correct in virtue of an explicit constitutional provision that has no counterpart ... and we are not authorized to correct the oversights of the Framers." *Forrester, supra*, 792 F.2d at 660. The holding in *Browning* is restricted to members of Congress.

There are sound reasons to allow a broader scope to Speech and Debate Clause immunity than to other types of legislative immunity. One of the primary rationales underlying the Speech and Debate Clause is the separation of powers. The purpose of the Clause is "to preserve the constitutional structure of separate, coequal and independent branches of government". *United States v. Gillock, supra*, 445 U.S. at 369, 100 S.Ct. at 1192 (citing *United States v. Helstoski*, 442 U.S. 477, 491, 99 S.Ct. 2432, 2441, 61 L.Ed.2d 12 (1979)). The privilege was born of a desire "to prevent intimidation by the executive and accountability before a possibly hostile judiciary." *United States v. Johnson*, 383 U.S. 169, 180–181, 86 S.Ct. 749, 754–755, 15 L.Ed.2d 681 (1966); *see also Helstoski, supra*, 442 U.S. at 493, 99 S.Ct. at 2441; *Gravel v. United States, supra*, 408 U.S. at 618, 92 S.Ct. at 2623 (1972). A broad interpretation of the protection afforded members of Congress by the Speech and Debate Clause ensures that the judiciary will refrain from encroaching into the sphere of power of a separate but equal branch of government. When a federal court entertains a claim against members of the federal legislature, it must respect constitutional barriers erected to prevent it

Clause but stated: "if petitioner is able to prevail on the merits, she should be able to redress her injuries in damages." *Davis v. Passman*,

442 U.S. 228, 248, 99 S.Ct. 2264, 2279, 60 L.Ed.2d 846 (1979).

from intruding into the sphere of the legislature. Thus, the principle of separation of powers supports a broad application of legislative immunity under the Speech and Debate Clause.

However, the principle of separation of powers is inapplicable to an analysis of absolute legislative immunity for a City Councilmember in the federal courts because the local legislature and the federal judiciary are not coordinate, equal branches of government.[4] Here, I do not have to worry about intruding into an area in which the Framers intended to free "the legislator from executive and judicial oversight that realistically threatens to control his conduct as a legislator." *Gravel, supra*, 408 U.S. at 618, 92 S.Ct. at 2623.[5] Thus, I do not think that the scope of absolute immunity afforded local legislators under federal common law is as broad as that available to members of Congress under the Speech and Debate Clause.

Nor do I think that precedent supports defendant's contention that she has absolute immunity in this suit. Under federal law, state, regional and local lawmakers enjoy absolute immunity when they act in a traditional legislative capacity. *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *Lake County Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979).

In *Tenney v. Brandhove, supra*, the Court held that California legislators could not be sued where they called a committee investigation which plaintiff alleged was to intimidate him and was not for a "legislative purpose". *Id.*, 341 U.S. at 371, 71 S.Ct.

at 785. The Court held that investigations were part of a legislator's duties and that the legislators were "acting in the sphere of legitimate legislative activity." *Id.* at 376, 71 S.Ct. at 788. The Court was careful to limit its holding to the facts before it. *Id.* at 378–379, 71 S.Ct. at 789–790.

Defendant cites other cases which support the proposition that non-federal legislators enjoy immunity where they engage in legislative acts. In *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (8th Cir. 1980), developers and an architect sued city directors for passing an allegedly unconstitutional amendment to the city's zoning ordinance. The court found that the city directors had absolute personal immunity from suit. In *Aitchison v. Raffiani*, 708 F.2d 96 (3rd Cir.1983), a former city building inspector sued the borough council for damages for wrongful discharge under the Civil Rights Act of 1871 for passing an ordinance abolishing his position. The council was held immune from suit. The cases uniformly allow local legislators absolute immunity when they perform traditional legislative functions such as the enactment of legislation or committee investigation. *See e.g., Reed v. Village of Shorewood*, 704 F.2d 943, 952 (7th Cir.1983); *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 829 (11th Cir.1982).

Here, defendant was not engaged in a traditional legislative function; she was neither enacting legislation nor participating in a committee investigation. Nor was she working on any particular project which might be characterized as a traditional legislative function. Rather, she was engaged in an administrative function, that of dealing with her staff. The federal

---

4. Defendant implicitly acknowledges this consideration in citing Chief Justice Burger's dissent in *Davis v. Passman, supra* p. 1423. There, the Chief Justice thought that a member of Congress should be immune from suit under the Speech and Debate Clause even where the Congressman had clearly discriminated against an employee:

> At this level of Government —staff assistants to members—long-accepted concepts of separation of powers dictate, for me, that until Congress legislates otherwise as to employment standards for its own staff, judicial power in this area is circumscribed.

*Davis v. Passman, supra* p. 1423, 442 U.S. at 249–250, 99 S.Ct. at 2279–2280 (emphasis added). The Chief Justice's broad conception of the protection afforded by the Speech and Debate Clause was limited to members of Congress, as was *Browning*'s broad interpretation of the Clause.

5. I do not reach here the question of what bearing the separation of powers principle would have if this action were brought in the D.C. Superior Court.

common law thus provides her no absolute immunity.

Furthermore, the rights granted in these cases are court-created rights, developed through analogy to the Speech and Debate Clause. When considering these common law rights against rights protected by the Constitution, I balance the competing interests and, short an extremely compelling reason, I believe precedence should be given to rights guaranteed under the Constitution.

■ Also bolstering my opinion are several recent Supreme Court decisions indicating that the Court will provide a judicial forum where a colorable constitutional claim is presented. *See Webster, Director of Intelligence v. Doe,* —— U.S. ——, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 2141 n. 12, 90 L.Ed.2d 623 (1986); *Bartlett v. Bowen,* 816 F.2d 695 (D.C.Cir. 1987). These cases stand for the proposition that, wherever possible, federal statutes will not be construed to deny a judicial forum for a colorable constitutional claim. *Webster, supra,* went even further and held that a statute which gave the CIA Director authority to terminate an employee where he "shall deem it necessary or advisable" precluded judicial review of the Director's termination decisions because, under § 701(a)(2) of the APA, "they were committed to agency discretion by law" except where those decisions were challenged for constitutional defect. Cite. The same reasoning should be applied when considering whether a common law immunity strips a citizen of her right to vindicate her constitutional rights. Since plaintiff's complaint presents colorable constitutional claims, I am all the more inclined to allow her a forum.

## II  RETALIATORY DISMISSAL

■ Defendant contends that plaintiff has failed to state a claim for retaliatory dismissal for the exercise of her First Amendment right to free speech under the rule prescribed by *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), because "given that plaintiff's job was essential to the due functioning of the legislative process, Councilmember Winter was clearly justified in terminating Ms. Gross in order to effectively and efficiently fulfill her responsibilities to the public." *See* Defendant's Motion to Dismiss at 17. *Connick* does not mandate this conclusion. On the contrary, *Connick* made clear that since plaintiff's First Amendment interest was a limited one, at best, it was outweighed by the government's interest in the effective and efficient fulfillment of its responsibilities. *Connick, supra,* 461 U.S. at 154, 103 S.Ct. at 1693.[6] In contrast, here, plaintiff's First Amendment claim is a compelling and important one: she claims that she was dismissed because she spoke to the ADL concerning the denial of a two day holiday to observe Rosh Hashannah. Thus, the balance to be struck between the individual's interest in her First Amendment rights and the government's interest in efficient operation is different from that in *Connick.* As *Connick* made clear:

> Because of the enormous variety of fact situations in which critical statements by ... public employees may be thought by their superiors ... to furnish grounds for dismissal, we do not deem it either appropriate or feasible to attempt to lay down a general standard against which all such statements may be judged.

*Pickering v. Board of Education,* 391 U.S. 563, 569, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968). Thus, defendant's categorical contention is incorrect.

Similarly, defendant's broad contention that under *Hall v. Ford,* No. 86–2667 (D.D. C. May 27, 1987), [available on WESTLAW, 1987 WL 11991], *appeal docketed,* No. 87–7138 (D.C.Cir. June 26, 1987), "Council-

---

6. In *Connick,* an Assistant District Attorney distributed a questionnaire to her colleagues inquiring into her colleagues opinions about office morale, procedure, the need for a grievance committee and whether they felt pressured to work on political campaigns. The Court held that only the question concerning the political campaigns invoked public concerns such that the plaintiff's First Amendment rights were implicated. The Court further labeled this First Amendment interest a "limited one."

members have absolute discretion as a matter of law in the hiring and firing of 'excepted service' employees such as plaintiff," *see* Defendant's Motion to Dismiss at 17, is incorrect. In *Hall,* the court concluded only that the UDC President had the unfettered discretion, under the "excepted service" provisions of the D.C. Code, to select plaintiff for the position of Athletic Director or to require plaintiff's resignation from that position. *Hall, supra,* at 14. In other words, the court's conclusions were limited to the facts before it and lend no support to defendant's broad assertions.

Reinforcing the decision in *Hall* was the fact that the nexus between the protected speech and the plaintiff's demotion was tenuous: plaintiff, former Athletic Director at UDC, had complained of violations of NCAA rules during the tenure of a different president than the one who demoted him. This weak link only strengthened the court's statement that "the District of Columbia has a significant interest in maintaining the integrity of the excepted service." *Hall, supra,* at 10. Based on the allegations in the complaint, there is no such tenuous link here. Rather, plaintiff exercised her First Amendment right to free speech in contacting the ADL and was, soon thereafter, terminated by her employer. The link is clear.

Thus, I think that plaintiff's claim for retaliatory dismissal is not outweighed as a matter of law by the government's interest in its efficient operation and I will allow that claim to go forward.

## III COMMON LAW CLAIMS

Because this court has jurisdiction under 28 U.S.C.A. § 1343(a)(3) to consider plaintiff's constitutional claims, this court also has pendent jurisdiction to consider plaintiff's common law claims of wrongful discharge in violation of public policy, slander and intentional infliction of emotional distress. The exercise of pendent jurisdiction is proper in this case because the common law claims state separate but parallel grounds for the relief sought under the

constitutional claims. *See generally United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Because the common law claims closely parallel plaintiff's constitutional claims, permitting the common law claims to go forward should not impose any additional burdens on defendant.[7]

As I have stated, I decided this Motion to Dismiss accepting the well-pled allegations of the complaint as true. As the factual record develops, there may come an appropriate time for defendant to file a motion for summary judgment. For the foregoing reasons, and upon consideration of the entire record herein, defendant's motion to dismiss is DENIED.

---

7. I note, however, that wrongful discharge in violation of public policy may not be a recognized tort in the District of Columbia. I also note that the "local speech and debate" clause, D.C.Code § 1–223, will certainly provide no more protection than the federal common law.