**CABLE NEWS NETWORK, et al. Plaintiffs,**

v.

**Donald K. ANDERSON, Clerk of the House of Representatives, et al. Defendants.**

Civ. A. No. 89–2642.

United States District Court, District of Columbia.

Oct. 25, 1989.

---

Timothy B. Dyk, Teresa D. Baer, Wilmer, Cutler & Pickering, Washington, D.C., for plaintiffs.

Steven R. Ross, General Counsel to the Clerk, U.S. House of Representatives, Washington, D.C.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Plaintiffs Cable News Network, Inc., Capital Cities/ABC, Inc., CBS Inc., and National Broadcasting Company, Inc. bring the instant action seeking to enjoin defendants from preventing plaintiffs from providing television coverage of the open hearings before the Subcommittee on Employment and Housing of the Committee on Government Operations of the United States House of Representatives ("the Subcommittee"). Presently pending before the Court is plaintiffs' motion for permanent injunction. For the reasons set forth below, the motion is denied and the case dismissed.

## I. BACKGROUND

The Subcommittee has been conducting open hearings since May 8, 1989 on the subject of allegations of widespread improprieties in the operation of the Department of Housing and Urban Development ("HUD") during the tenure of former Secretary Samuel R. Pierce, Jr.[1] On May 25, 1989, former Secretary Pierce testified before the Subcommittee. That testimony was covered by television and was presented by C–Span in its entirety.[2] When Pierce failed to appear at a scheduled hearing on September 15, 1989, he was served with a subpoena (issued September 20, 1989) to appear for further testimony on September 26, October 27, and November 3, 1989. Plaintiffs planned to cover the September 26, 1989 hearings with television cameras and to broadcast all or part of the hearings.[3] On Friday afternoon, September 22, 1989, Pierce announced that he did not wish his testimony to be available for broadcast. In a letter to Representative Thomas Lantos, Chairman of the Subcommittee, copies of which were sent to plaintiffs, Pierce's attorney invoked House Rule XI(3)(f)(2), demanding that cameras be excluded from the September 26, 1989 hearing and subsequent hearings involving Pierce. Rule XI(3)(f)(2) provides:

No witness served with a subpoena by the committee shall be required against his or her will to be photographed at any hearing or to give evidence or testimony while the broadcasting of that hearing by radio or television is being conducted. At the request of any such witness who does not wish to be subjected to radio, television, or still photograph coverage, all lenses shall be covered and all microphones used for coverage turned off.

Plaintiffs filed the instant complaint on September 25, 1989, alleging that defendants' action barring broadcast of the proceedings violates the First Amendment and the equal protection component of the Due Process Clause of the Fifth Amendment. On that same day, the Court denied plaintiffs' motion for a temporary restraining order.

Pierce appeared before the Subcommittee on September 26, 1989 as scheduled. Although the hearings were open to the print press and the public, television camera and radio broadcast of his testimony were not permitted. On September 27, plaintiffs filed an amended complaint seeking to enjoin defendants from enforcing Rule XI(3)(f)(2) against plaintiffs and from preventing plaintiffs from engaging in television camera and radio coverage of the open proceedings to be held in the future. By consent of all parties, plaintiffs' motion for preliminary injunction, filed with its original complaint, was converted to a motion for permanent injunction. A hearing on that motion was held on October 12, 1989.

---

1. Affidavit of Patrick J. Cullen, ABC News Assignment Editor ("Cullen Aff."), ¶ 4.

2. *Id.*

3. *Id.* ¶ 5.

## II. DISCUSSION

The crux of plaintiffs' argument is that there is no government interest supporting Rule XI(3)(f)(2), whose effect is to permit subcommittee witnesses to manipulate media coverage. Plaintiffs assert that the rule arbitrarily bars television and radio coverage of the otherwise open hearings and therefore violates the First Amendment rights of plaintiffs to gather, and the public to receive, vital information about the functioning of the federal government. Plaintiffs are *not* asserting an absolute right to televise committee hearings in the House of Representatives. Rather, they contend that the House may not allow televised coverage of those hearings and arbitrarily delegate to a private party—the subpoenaed witness—the right to determine whether television camera coverage will continue. Plaintiffs argue that any legitimate interest of the House is fully served by a rule, similar to that in effect in the Senate,[4] that gives House committees, rather than witnesses subpoenaed to testify before them, the power to determine whether television cameras should be excluded.

Defendants argue that the Rulemaking Clause and the Speech or Debate Clause of the Constitution render plaintiffs' challenge to the enforcement of House Rule XI(3)(f)(2) non-justiciable. Arguing in the alternative, defendants maintain that should the Court determine that the issue is justiciable, the rule withstands First Amendment scrutiny. For the following reasons, the Court agrees with defendants that the Speech or Debate Clause bars judicial review of House Rule XI(3)(f)(2) and therefore expresses no opinion as to the merits of plaintiffs' First Amendment argument.

### A. Justiciability

A case may involve a nonjusticiable political question if, among other things, "a textually demonstrable constitutional commitment of the issue to a coordinate political department" is involved. *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). As the Supreme Court stated in *Powell v. McCormack*, 395 U.S. 486, 516–17, 89 S.Ct. 1944, 1961–62, 23 L.Ed.2d 491 (1969):

First, we must decide whether the claim presented and the relief sought are of the type which admit of judicial resolution. Second, we must determine whether the structure of the Federal Government renders the issue presented a "political question"—that is, a question which is not justiciable because of the separation of powers provided by the Constitution.

Although courts have not been consistent in their terminology, referring to the concept as "non-justiciability," "separation of powers," and "political question," it is clear that there is a class of issues for which the courts refuse to exercise their power of judicial review.[5] In the instant case, defendants assert that the Rulemaking Clause and the Speech or Debate Clause of the Constitution forbid enjoining the House against determining and enforcing the rules of its own proceedings. The Court will address each contention separately.

### 1. *The Rulemaking Clause*

■ The Rulemaking Clause of the Constitution, Article I, § 5, cl.2, provides: "Each House may determine the Rules of its Proceedings ..." Defendants argue that this constitutional provision bars judicial review of House Rule XI(3)(f)(2), an internal rule of the House of Representatives concerning how the House conducts its proceedings. However, the Supreme Court and this circuit have determined that the Rulemaking Clause is not an absolute bar to judicial review of House Rules. Rather, House rules may be scrutinized by federal courts for compliance with constitutional requirements.

In *United States v. Ballin*, 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321 (1892), which in-

---

4. Senate Rule XXVI 5(c).

5. This circuit has also utilized a doctrine known as the doctrine of "equitable discretion." *See Gregg v. Barrett*, 771 F.2d 539, 543–546 (D.C.Cir.

1985); *see generally,* McGowan, *Congressmen in Court: The New Plaintiffs,* 15 Ga.L.Rev. 241 (1981).

volved a House Rule with respect to determining the presence of a quorum, the Supreme Court was quite clear on this point:

> Neither do the advantages or disadvantages, the wisdom or folly, of such a rule present any matter for judicial consideration. With the courts the question is only one of power. The Constitution empowers each house to determine its rules of proceedings. *It may not by its rules ignore constitutional restraints or violate fundamental rights,* and there should be a reasonable relation between the mode or method of proceeding established by the rule and the result which is sought to be attained. *But within these limitations,* all matters of method are open to the determination of the house, and it is no impeachment of the rule to say that some other way would be better, more accurate, or even more just. It is no objection to the validity of a rule that a different one has been prescribed and in force for a length of time. The power to make rules is not one which once exercised is exhausted. It is a continuous power, always subject to be exercised by the house, and, *within the limitations suggested,* absolute and beyond the challenge of any other body or tribunal.

*Id.* 144 U.S. at 5, 12 S.Ct. at 509 (emphasis added).

Our circuit has consistently affirmed this principle. *Vander Jagt v. O'Neill,* 699 F.2d 1166 (D.C.Cir.), *cert. denied,* 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983) involved claims by fourteen Republican Members of the House against the House Democratic leadership that the Democrats systematically discriminated against them by providing them with fewer seats on House committees and subcommittees than they were proportionately owed. In the face of an argument that the Rulemaking

Clause barred judicial review, our court of appeals stated: "this circuit has previously expressed its reluctance to review congressional operating rules, though it has never denied its power to do so. The discomfort has been rooted in the doctrine of nonjusticiable political questions, as set forth in *Baker v. Carr....*" *Id.* at 1173. The court went on to conclude that

> "Art. I simply means that neither we nor the Executive Branch may tell Congress what rules it must adopt. Article I does not alter our judicial responsibility to say what rules Congress may not adopt because of constitutional infirmity."

*Id.*

In *Morgan v. United States,* 801 F.2d 445 (D.C.Cir.1986), *cert. denied,* 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987), a group of registered Republicans challenged a House determination that a Democratic contestant in a disputed election for an Indiana seat was lawfully elected to the House. Although the case involved the Elections Clause of the Constitution, Art. I, § 5, cl. 1, Judge (now Justice) Scalia made clear that the Rulemaking Clause is not an absolute bar to judicial review of House rules:

> It is true, as the appellants point out, that this court has found no absolute prohibition of judicial review in the clause, adjacent to the Elections Clause, which states that "[e]ach House may determine the Rules of its Proceedings." Art. I, § 5, cl. 2. *See Vander Jagt v. O'Neill,* 699 F.2d 1166 (D.C.Cir.), *cert. denied,* 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983).

*Id.* at 449.

The teaching of these cases is that internal rules of the House of Representatives are not immune from judicial review for compliance with constitutional requirements.[6] Here, plaintiffs allege that the

---

**6.** *See also Powell v. McCormack,* 395 U.S. 486, 501–06, 89 S.Ct. 1944, 1953–56, 23 L.Ed.2d 491 (1969) (courts are not precluded from ruling on the constitutionality of a House resolution pertaining to the seating of one of its Members— "That house employees are acting pursuant to express orders of the House does not bar judicial review of the constitutionality of the under-

lying legislative decision."); *Exxon Corporation v. Federal Trade Commission,* 589 F.2d 582, 590 (D.C.Cir.1978), ("[a]lthough the courts will intervene to protect constitutional rights from infringement by Congress, including its committees and members, ... where constitutional rights are not violated, there is no warrant for the judiciary to interfere with the internal pro-

House Rule at issue infringes upon the First Amendment rights of both plaintiffs and the public at large. The Court therefore concludes that the Rulemaking Clause does not bar judicial review of House Rule XI(3)(f)(2) for compliance with First Amendment requirements.

### 2. *Speech or Debate Clause*

■ Defendants also assert that the Speech or Debate Clause prohibits judicial review of House Rule XI(3)(f)(2). The Speech or Debate Clause, Art. I § 6, provides, in relevant part: "for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place." The Clause was "designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch," and "protects Members against prosecutions that directly impinge upon or threaten the legislative process." *Gravel v. United States*, 408 U.S. 606, 616, 92 S.Ct. 2614, 2622, 33 L.Ed.2d 583 (1972). The Clause protects activities which are "essential to legislating." *See id.* 408 U.S. at 621, 92 S.Ct. at 2625.

Although courts read the Clause broadly, it is clear that the Clause does not extend to acts outside the "legislative sphere," *Gravel*, 408 U.S. at 624–25, 92 S.Ct. at 2626–27, or "casually or incidentally related to legislative affairs." *Walker v. Jones*, 733 F.2d 923, 929 (D.C.Cir.) (quoting *United States v. Brewster*, 408 U.S. 501, 528, 92 S.Ct. 2531, 2545, 33 L.Ed.2d 507 (1972)), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). As the Supreme Court stated in *Gravel:*

Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative pro-

cesses by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627.

In the instant case, the issue is whether defendants' actions in enforcing House Rule XI(3)(f)(2) fall within the "sphere of legitimate legislative activity." Defendants, relying primarily on *Consumers Union v. Periodical Correspondents Association*, 515 F.2d 1341 (D.C.Cir.1975), *cert. denied*, 423 U.S. 1051, 96 S.Ct. 780, 46 L.Ed.2d 640 (1976) and *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975), urge the Court to answer this question in the affirmative.

In *Consumers Union*, a consumers' organization brought an action against an association of periodical correspondents and sergeants-at-arms of the Senate and House challenging the refusal of the association to accredit the organization's publication and its designated representative to the periodical press galleries of Congress. Rules of both the House and Senate authorized the adoption of rules governing press galleries. The Court found that the association's actions were immune from suit under the Speech or Debate Clause and that case was nonjusticiable "because it involve[d] matters committed by the Constitution to the Legislative Department and as to which the acts of the appellants, under the circumstances, did not breach the limits of legislative immunity." *Id.* at 1346. The Court concluded that "the internal rules involved constituted a demonstrable constitutional commitment to the legislative branch of government." *Id.* at 1347. The Court further found that the defendants

cedures of Congress.") (citations omitted), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979); *Kurtz v. Baker*, 630 F.Supp. 850, 856 (D.D.C.1986) (claim brought by a nontheist challenging administration of an informal program whereby chaplains for the House and Sen-

ate allowed guest chaplains to give morning prayer was not a nonjusticiable political question, nor was it barred by the Speech or Debate Clause; the political question doctrine does not preclude review of House and Senate rules for their constitutionality).

were enforcing internal rules of Congress validly enacted under authority specifically granted to the Congress and within the scope of authority appropriately delegated by it. They were engaging in a sense in acts generally done in relation to the business before Congress, cf. *Kilbourn [v. Thompson]*, 103 U.S. [168] at 204, 26 L.Ed. 377, [ (1880) ], "an integral part of the deliberative and communicative processes," *Gravel*, 408 U.S. at 625, 92 S.Ct. at 2627. They fell within "the sphere of legislative activity," *Eastland v. United States Servicemen's Fund*....

*Id.* at 1350.

In *Eastland*, a servicemen's organization and two of its members brought suit against the chairman of the Senate Subcommittee on Internal Security, senator members, and the chief counsel of the subcommittee to enjoin implementation of a subpoena to a bank where the organization had an account which ordered the bank to produce all records relating to the account. The Supreme Court found that the defendants' actions were protected by the Speech or Debate Clause and therefore immune from judicial interference. The Court specifically rejected plaintiff's argument that defendants' actions infringed upon their First Amendment rights.

Finally, respondents argue that the purpose of the subpoena was to "harass, chill, punish, and deter" them in the exercise of their First Amendment rights ... and thus that the subpoena cannot be protected by the Clause. Their theory seems to be that once it is alleged that First Amendment Rights may be infringed by congressional action the Judiciary may intervene to protect those rights; the Court of Appeals seems to have subscribed to that theory. That approach, however, ignores the absolute nature of the speech or debate protection and our cases which have broadly construed that protection ... For us to read the Clause as respondents suggest would create an exception not warranted by the language, purposes, or history of the Clause. Respondents make the familiar argument that the broad protection granted by the Clause creates a potential for abuse. That is correct, and in *Brewster, supra*, we noted that the risk of such abuse was the "conscious choice of the Framers" buttressed and justified by history. 408 U.S., at 516, 92 S.Ct., at 2539. Our consistently broad construction of the Speech or Debate Clause rests on the belief that it must be so construed to provide the independence which is its central purpose.

*Eastland*, 421 U.S. at 509–11, 95 S.Ct. at 1824–26.

Plaintiffs concede that the conduct of investigative hearings by the Subcommittee, as well as the issuance of the subpoena to Secretary Pierce are entitled to Speech or Debate Clause protection because they are an "integral part of the legislative process." [7] Nonetheless, they maintain that Rule XI(3)(f)(2), which governs the communications of the House with the general public by the recording and broadcasting of the hearings, is only "casually or incidentally" related to the legislative process and far from the "legislative core" protected by the Speech or Debate Clause and therefore not immune from judicial review. Plaintiffs rely on *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), in which the Supreme Court held that the Speech or Debate Clause did not protect the transmittal of allegedly defamatory material in press releases and newsletters by a United States Senator because it was not essential to the deliberations of the Senate nor was it part of the deliberative or legislative process. Plaintiffs also rely on *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), in which the Supreme Court found that dissemination of actionable material to the public at large was not protected by the Speech or Debate Clause, and *Gravel*, where the Supreme Court held that private publication of committee materials was similarly not

---

7. Plaintiffs' Reply to Defendants' Memorandum in Opposition to Plaintiffs' Request for Permanent Injunctive Relief ("Reply"), pp. 8–9.

protected. From these cases, plaintiffs argue that congressional activities primarily concerned with the dissemination of information to the public are not entitled to Speech or Debate Clause protection. The Court disagrees.

Despite plaintiffs' protestations to the contrary, this Court concludes that *Eastland* effectively determines the outcome in this case. As in *Eastland,* where the Supreme Court concluded that both the act of authorizing an investigation pursuant to which materials were gathered as well as the issuance of a subpoena pursuant to that authorization were integral and indispensable parts of the legislative process,[8] affording Subcommittee witnesses the protection of House Rule XI(3)(f)(2) is similarly within the "legislative sphere."

That plaintiffs have alleged a First Amendment violation does not eviscerate the protection of the Speech or Debate Clause. As *Eastland* makes clear, such an allegation is insufficient to overcome the broad coverage of the Speech or Debate Clause. The Framers of the Constitution recognized the risk of abuse attending such a broad construction but nevertheless concluded that it was essential to affording due independence to legislators.

Here, it is beyond dispute that the Subcommittee has the authority to conduct hearings as part of its investigation into the alleged improprieties in the operation of HUD. In carrying out this function, as it has done in the past in the context of other Committee and Subcommittee investigations, the House has enforced, albeit sometimes reluctantly, House Rule XI(3)(f)(2).[9] That the Rule remains alive evinces a continuing determination by the House that it serves some role in assisting the various Subcommittees in carrying out their investigatory responsibilities.[10] The opinion of this Court, or for that matter, the opinion of a singular member of the House of Representatives, as to the wisdom of the Rule is of no importance, for the Rule has not been amended, repealed, or revoked as of this date. This Court concludes, as in *Eastland,* that judicial review is therefore barred by the Speech or Debate Clause since House Rule XI(3)(f)(2) is "within the legitimate legislative sphere" and "essential to legislating."

Interestingly, the recent comments of Chairman Lantos, upon which plaintiffs rely, support the conclusion the Court reaches today. Lantos has stated that the Rule is "no longer relevant" and "has outlived its usefulness."[11] At the September 26, 1989 Subcommittee hearing, Lantos stated:

> The House Rule, giving witnesses the right not to [be] photographed or to re-

---

**8.** *See Eastland,* 421 U.S. at 505–06, 95 S.Ct. at 1822–23.

**9.** Defendants state that to their knowledge, in every instance in which a subpoenaed witness has invoked House Rule XI(3)(f)(2), it has been followed. House Memorandum in Opposition to Plaintiffs' Request for Permanent Injunctive Relief ("Opp."), p. 19. They supply several examples of instances in which House Subcommittees have followed House Rule XI(3)(f)(2) once invoked. *See id.,* exhibits 12–15.

**10.** The sparse legislative history that the parties have provided the Court does not illuminate the intended purposes of the Rule. However, defendants have offered the following chronology describing the genesis of the Rule. Defendants claim that the formal start of House Rule XI(3)(f)(2) was marked by a pronouncement of Speaker Sam Rayburn in 1952 upon a parliamentary inquiry. At that time, the ban on television broadcast covered all hearings, without regard to whether witnesses were subpoenaed or not. Although the rule started in 1952, it was not uniformly followed until 1957 when the House Un–American Activities Committee opened hearings on communists in San Francisco. William K. Sherwood, who was to testify before the Committee on television, committed suicide, expressing in his suicide note his fierce resentment of being televised. In reaction to this event, four witnesses who were scheduled to appear before the same Committee were granted the right not to be televised while testifying. Finally, in the Legislative Reorganization Act of 1970, the current House Rule came into being.

Defendants contend that among the many purposes of the Rule was the desire to facilitate House committees and subcommittees in efficiently carrying out their legislative duties. Barring radio and television broadcast would encourage more candid testimony by subpoenaed witnesses by eliminating a major source of their nervousness. *See* Opp., Exhibit 9, p. 50.

**11.** Amended Complaint, Attachment 2, at 1–2.

fuse to present testimony during television and radio broadcasting of this hearing was adopted by the House of Representatives during the notorious McCarthy hearings. Times have changed since then. Both the House and the Senate now obviously allow all media coverage of their proceedings. It is my strong view that the Rule Mr. Pierce chose to invoke no longer serves the American people and their right to know, nor is it required as a protection to any witness ... [T]he decision by Mr. Pierce to invoke this House Rule, which is a very rare occurrence, is a disservice both to him and the American people.[12]

For these reasons, Chairman Lantos has introduced a resolution to amend the Rules of the House of Representatives to permit a committee, rather than a subpoenaed witness, to vote to allow live media coverage of the testimony of a subpoenaed witness.[13] Should the required number of Congressmen and Congresswomen agree with Chairman Lantos that House Rule XI(3)(f)(2) no longer serves any legitimate purpose and that the proposed rule is wiser and fairer, nothing prevents them from repealing the old rule and enacting a new one.[14] But the fact that the House has not chosen to do so does not give this Court the option to ignore the broad range of protection afforded by the Speech or Debate Clause to actions, such as the invocation of House Rule XI(3)(f)(2), which are clearly within the legislative sphere and deemed essential to legislating.[15]

Plaintiffs have chosen the wrong forum in which to present their objection. Their recourse lies not with the courts, but rather with the co-equal branch of government which enacted House Rule XI(3)(f)(2), the United States House of Representatives.

### III. CONCLUSION

For the reasons set forth above, it is accordingly hereby ORDERED that plaintiffs' motion for permanent injunction is denied and this case stands dismissed.

IT IS SO ORDERED.

---

12. Reply, Attachment 1, at 4, 5.

13. *See* Reply, at 3.

14. Although both plaintiffs, in their reply brief, and defendants, at oral argument, represented that no immediate action on Lantos' proposal is likely, defendants did agree that approval of the proposal could be accomplished in the dispatch of a day should sufficient members' votes be mustered to do so.

15. Interestingly, Chairman Lantos is not the only Chairman of a House Subcommittee to oppose House Rule XI(3)(f)(2). Albert Gore, Jr. expressed his view in 1978 and 1981, as Chairman of the House Subcommittee on Oversight and Investigations of the Committee on Interstate and Foreign Commerce, that House Rule XI(3)(f)(2) was unwise and should be changed. *See* Opp., Exhibits 12, 13. Yet despite his personal disagreement, then Congressman Gore recognized that he was constrained to follow the rule and did indeed abide by it.