**Juan A. DAVILA LOPES**

**v.**

**Jose SOLER–ZAPATA; Giordano San Antonio; Engracia Truyol–Vazquez; Ausberto Alejandro Benitez; Edgar Belmonte; Jose M. Dalmasy–Montalvo; all in their official and personal capacities; Carmen Feliciano, Dr.**

Civil No. 92–2503(SEC).

United States District Court,
D. Puerto Rico.

Feb. 20, 1996.

Guillermo J. Ramos–Luina, Hato Rey, PR, for Plaintiff.

Mirta E. Rodríguez–Mora, Department of Justice, Federal Litigation Division, San Juan, PR, Eileen Morales–Ramirez, García & Fernández Law Offices, Hato Rey, PR, Eli B. Arroyo, San Juan, PR, for Defendants.

## ORDER

CASELLAS, District Judge.

Pending before the Court is defendants' Motion for Summary Judgment. (Docket # 40) After a careful analysis of the parties' arguments and applicable law, defendants' Motion for Summary Judgment is **GRANTED.**

Plaintiff Juan A. Davila Lopes alleges that defendants Giordano San Antonio, Engracia Truyol Vazquez, Ausberto Alejandro Benitez, Jose M. Dalmasy Montalvo and Edgar Belmonte conspired to deny his application of medical privileges at the Guayama Area Hospital, in violation of the Hospital's Regulations. Plaintiff alleges that defendants acted willfully, arbitrarily, capriciously and with deliberate indifference by depriving him of his property and liberty rights, in violation of the Due Process clauses of the United States Constitution. This Court holds that defendants provided plaintiff with adequate due process and, accordingly, did not deprive him of a property or liberty interest as defined by the Fourteenth Amendment.

### Plaintiff's Fourteenth Amendment Claim

The Fourteenth Amendment of the United States Constitution forbids the state to deprive any person of life, liberty or property without due process of law. *Goss v. Lopez,* 419 U.S. 565, 572, 95 S.Ct. 729, 735, 42 L.Ed.2d 725 (1975). The jurisprudence has extended this protection to traditional forms of real, personal and intangible property as well as the right to certain government bene-

fits. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

■ Before the Court determines whether to apply the constitutional guarantee of procedural due process, it must first determine "the presence of a legitimate 'property' or 'liberty' interest within the meaning of the Fifth or Fourteenth Amendment." *Arnett v. Kennedy*, 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974); *Board of Regents v. Roth*, 408 U.S. 564, 569–572, 92 S.Ct. 2701, 2705–2707, 33 L.Ed.2d 548 (1969). In *Board of Regents v. Roth*, the Court identified the sources of property interests: "Property interests ... are not created by the constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth* at 577, 92 S.Ct. at 2709.

■ Once it is determined that due process applies, the question remains what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The Supreme Court has noted that "[d]ue process, which may be said to mean fair procedure, is not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *see also Gorman v. University of Rhode Island*, 837 F.2d 7 (1st Cir.1988).

■ The Court in *Mathews* noted that notice and opportunity to be heard have traditionally and consistently been held to be the essential requisites of procedural due process. The Courts have stated that an opportunity to be heard requires that an individual be afforded "some kind of hearing." *Goss v. Lopez*, 419 U.S. at 579, 95 S.Ct. at 738. To determine whether due process has been denied, the courts have had to ascertain the scope of protection required in a particular setting, as well as an accommodation of the competing interests involved. *Mathews*, 424 U.S. at 319, 96 S.Ct. at 893. The three essential factors are: first, the private inter-est that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; finally, the state interest, including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

## ANALYSIS

This is not the first time that plaintiff Jose A. Davila Lopes invokes a due process violation against physicians from the Guayama Area Hospital. Defendants have submitted, in support of their summary judgment motion, a copy of a judgment against plaintiff Davila Lopes in Civil Action No. CS–87–1731 (Exhibit B; see also Docket #35, Certified Translation of Judgment in Civil Action No. CS–87–1731, hereinafter "Translated Judgment"). Although we need not invoke the doctrine of collateral estoppel to resolve the issues in this case, the decision of the state court on a related dispute can greatly elucidate the equities of this case. Plaintiff instituted an action against the San Juan Bautista Medical Sciences University and Doctor Jose M. Dalmasy, among others, when those defendants dismissed him from the medical faculty of the Guayama Area Hospital on September 4, 1987 (Translated Judgment, p. 4, ¶ 9). On June 7, 1990, the Superior Court of Puerto Rico, Guayama Part, concluded that the defendants had provided adequate due process to plaintiff prior to his dismissal from the medical staff. (Translated Judgment, p. 9). The state court also held that plaintiff was no longer entitled to medical privileges at the Guayama Area Hospital, since such privileges terminated upon his dismissal. (Translated Judgment, p. 7, ¶ 13). The state court noted that defendants in that case had given plaintiff an adequate opportunity to defend himself. *Id.* at 9. In its findings of fact, the state court noted the reasons which the defendants gave for the termination of plaintiff's contract:

a) plaintiff's failure to make medical rounds in the hospital;

b) plaintiff's refusal to answer consultations from the Emergency Department;

c) plaintiff's refusal to make evaluations of an outpatient clinic patient;

d) plaintiff investigated cases in Intensive Care who had medical insurance and called said department for those patients to be put under his care;

e) when plaintiff replied to consultations from the Emergency Department, he questioned the patient's payment category;

f) plaintiff's continued failure to show up at the outpatient clinics on days when he was on call;

g) plaintiff's repeated tardiness at outpatient clinics and supervision of few patients, although he had been notified about his obligation to see at least seven or eight patients.

(Translated Judgment, pp. 5–6, ¶ 9).

Plaintiff was aware of the Hospital's reaction to these incidents during his tenure at the Guayama Area Hospital. The state court indicated that the medical staff repeatedly tried to change his behavior to no avail. (Translated Judgment, p. 6, ¶ 11).

On April 29, 1991, plaintiff requested medical privileges at the Internal Medicine Department of the Guayama Area Hospital. (Plaintiff's Complaint, ¶ 3.2). Plaintiff applied for such privileges approximately ten months after the conclusion of the state court proceedings in which doctors at the Guayama Area Hospital had informed him of all the reasons for his dismissal. Upon denial of his application for medical privileges, he requested a hearing, which defendants held on January 17, 1992. (Plaintiff's Complaint, ¶ 3.9). He renewed his application for medical privileges and on January 24, 1992, defendants ratified their decision denying plaintiff's application for medical privileges. (Plaintiff's Complaint, ¶ 3.11). Plaintiff alleges that on each of those occasions he was entitled to a written statement of reasons for the denial of his application, pursuant to the Hospital's Regulations. (Plaintiff's Complaint, ¶ 3.14).

■ Were this a case one in which the defendant had no previous contact with the Guayama Area Hospital, we would look askance upon the Hospital's reticent denial.

However, plaintiff's litigious relationship with the Hospital colors his subsequent claim to due process. Plaintiff does not claim that defendants threw away his application into a garbage can, or that defendants discriminated against him due to political, racial or religious factors; he cannot even claim that defendants denied him a hearing, where he could explain his credentials. There is no evidence that defendants summarily denied his application without looking at the documents which he submitted. In fact, every time he submitted his application, the defendants promptly replied. (Exhibit 7, Giordano San Antonio's Letter dated November 7, 1991; Exhibit 14, Ausberto Benitez' Letter Dated January 21, 1992).

Plaintiff's due process argument hinges on an isolated clause of the Hospital's Regulations. Pursuant to the requirements of Article IV of the Regulations, plaintiff alleges that defendants failed to submit "a concise statement of the practitioner's alleged acts or omissions, including, where appropriate, a list of specific or representative patient records in question or the other reasons or subject matter forming the basis for the adverse recommendation or adverse action which is the subject of the hearing." (Exhibit A, Article IV, Hearings and Appellate Review, p. 21).

The parties dispute whether the Regulations of the Hospital applied to plaintiff. Defendants argue that such regulations apply only to the medical staff of the Guayama Area Hospital, whereas plaintiff alleges that the regulations apply to every physician who applies to the hospital for medical privileges. Regardless of this dispute, this Court concludes that defendants provided plaintiff with adequate due process in their prompt review and denial of plaintiff's application of medical privileges. They also provided adequate due process in their reconsideration of plaintiff's denial of medical privileges.

■ This Court must assess the plaintiff's entitlement to due process in the light of his previous knowledge. We reiterate the Supreme Court's holding that due process "is not a fixed or rigid concept, but, rather a flexible standard which varies depending

upon the nature of the interest affected, and the circumstances of the deprivation." *Mathews v. Eldridge*, 424 U.S. at 334, 96 S.Ct. at 902. *See also Romero Barcelo v. Hernandez Agosto*, 75 F.3d 23 (1st Cir.1996) ("the process due depends in large part on the circumstances.") By June of 1990, several months before plaintiff applied for medical privileges, doctors from the Guayama Area Hospital had provided him with a substantial list of reasons for his dismissal. There is nothing in the record to show that plaintiff did not know about the Hospital's grievances. In fact, it would be highly disingenuous for the plaintiff to expect that the concise statement of reasons which he sought upon his denial of medical privileges would include anything different from the reasons already proffered to him by defendants at the state proceedings, and which the state court considered adequate grounds for his dismissal.

In the present case, defendants provided plaintiff with sufficient due process when they reviewed plaintiff's application, provided him "some kind of hearing" where he had the opportunity to be heard, *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) and entertained his application for reconsideration of their denial. Defendants promptly notified plaintiff of the denial for medical privileges and provided plaintiff ample opportunity to respond, explain and defend himself with regards to the denial for medical privileges. Plaintiff clearly acknowledges in his complaint that at the hearing he submitted evidence in support of his review, such as his medical license, his licenses to prescribe controlled drugs, his medical malpractice insurance policy and his specialty certificate. (Plaintiff's Complaint, ¶ 3.10). A committee spokesman for the Hospital acknowledged the evidence and notified plaintiff that the committee would notify him of its decision in writing. Defendants promptly notified plaintiff, on January 24, 1992, that the decision of the Governing Body of the Hospital denying plaintiff's request for privileges was being ratified and affirmed. (Plaintiff's Complaint, ¶ 3.11). Upon such denial, plaintiff requested documents from the hearing. Upon defendants' refusal, plaintiff instituted this action.

Defendants argue, and this Court agrees, that plaintiff cannot claim that he had a legitimate claim to find out the reasons for the denial of medical privileges, when he had ample knowledge of the reasons which caused his dismissal from the Hospital and caused him to lose his medical privileges in the first place. He had no legitimate expectation to another set of reasons from the Hospital.

### *Mathews v. Eldridge* Balancing Test

■ Under the *Mathews v. Eldridge* test, the equities of this case side strongly against plaintiff's claim of a due process violation.

### a. Private Interest Affected

■ Pursuant to the *Mathews v. Eldridge* balancing test, the court must determine the private interest that will be affected by the official action. In the present case, plaintiff's interest in medical privileges is significant, since it would bolster his medical practice; however, plaintiff has not shown that he is entitled, as of right, to be granted medical privileges at the Hospital. Plaintiff might have a need, or a desire, to be granted the requested privileges. However, such expectations do not constitute a legitimate claim of entitlement to the privileges requested. As noted by *Roth*, "to have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. This is not a case where plaintiff belonged to the medical staff, and defendants summarily denied him privileges. It is clear that the Regulations apply to the medical staff. But it is also clear that he lost access to those medical privileges when he ended his contractual relationship with the medical staff. Since plaintiff has not clearly established that he was entitled to those medical privileges, the defendants' denial of medical privileges without a concise statement of reasons does not rise to the level of a constitutional deprivation of a property or liberty interest.

 

## b. Risk of Erroneous Deprivation

In the present case, the risk of an erroneous deprivation of plaintiff's medical privileges is negligible. As noted above, defendants would have provided the same reasons already proffered to him by the defendants at the state proceedings and which the state court considered adequate grounds for dismissal. Defendants correctly note that, ironically, defendants' failure to provide a concise statement of reasons in their denial of medical privileges shielded plaintiff from further publication of his wrongdoings, which had already supported the Hospital's decision to terminate his regular privileges. (Deposition of Dr. Alejandro, p. 55; Translated Judgment, p. 5–6, ¶ 9).

## c. State Interest, Function Involved and Fiscal and Administrative Burdens of Additional Procedures

■ Although providing a concise statement of reasons upon denial of medical privileges at a state hospital does not constitute a substantial burden upon the state, it would be futile to order defendants in the present case to reconsider plaintiff's application and deny the application again, this time with a set of written reasons detailing plaintiff's shortcomings, the same reasons which a different set of doctors from the same Hospital had already proffered in the previous state court proceedings. We reiterate the Supreme Court's admonition that "the interpretation and application of the Due Process Clause are intensely practical matters and that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation'" *Goss v. Lopez,* 419 U.S. at 578, 95 S.Ct. at 738 (quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)).

Upon application of the *Mathews* Test, the Court finds that plaintiff has failed to establish a due process violation under the Fourteenth Amendment. Accordingly, defendants' Motion for Summary Judgment is **GRANTED** (Docket # 40) and plaintiff's complaint against defendants in the present case is **DISMISSED.** Judgment shall follow accordingly.

**SO ORDERED.**